# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

WANDA H.,[1]
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 3:24-cv-004

Litkovitz, M.J.

**ORDER**

Plaintiff Wanda H. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for Disability Insurance benefits (DIB) and Supplemental Security income (SSI).  This matter is before the Court on plaintiff's Statement of Errors (Doc. 8), the Commissioner's response (Doc. 9), and plaintiff's reply (Doc. 10).

## I.  Procedural Background

Plaintiff protectively filed her applications for DIB and SSI in June 2021, alleging disability beginning June 10, 2021 due to a back problem, tendonitis, a shoulder problem, diabetes, and no spleen.  (Tr. 197-201, 202-11, 242).  Plaintiff's applications were denied initially and on reconsideration.  Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Laura Chess.  Plaintiff, represented by counsel, and a vocational expert (VE), appeared and testified at the ALJ hearing on October 25, 2022.  (Tr. 40-81).  On January 3, 2023, the ALJ issued a decision denying plaintiff's DIB and SSI

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

applications.  (Tr. 16-39).  This decision became the final decision of the Commissioner when the Appeals Council denied review on November 9, 2023.  (Tr. 3-8).

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI).  The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four steps of the sequential evaluation process.  *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004).  Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy.  *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B.  The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2025.

2. [Plaintiff] has not engaged in substantial gainful activity since June 10, 2021, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. [Plaintiff] has the following severe impairments: lumbar degenerative disc disease, [status post] fractures in the spine, sacroiliitis, left shoulder degenerative joint disease, left biceps tendinosis with associated tearing, bilateral carpal tunnel syndrome and de Quervain's tenosynovitis status post right release, status post splenectomy, hyperthyroidism, type II diabetes mellitus, visual disorders, and insomnia (20 CFR 404.1520(c) and 416.920(c)).

   . . . .

   [Plaintiff] has the following nonsevere impairments: allergic reaction, tachycardia, Covid-19, and substance use disorder.

   . . . .

[Plaintiff] has the following nonmedically determinable impairment: anxiety.

4.  [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, I find that [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) subject to the following limitations: (1) after 90 minutes of standing/walking [plaintiff] would need to sit down for up to 5 minutes before standing/walking again; (2) [plaintiff] can remain at the workstation and on-task when alternating positions; (3) occasional pushing/pulling with the non-dominant left upper extremity; (4) occasionally climbing ramps and stairs, stooping, kneeling, crouching, and crawling; (5) never climbing ladders, ropes, or scaffolds; (6) occasionally reaching overhead with the non-dominant left upper extremity; (7) frequently reaching in all other directions with the non-dominant left upper extremity; (8) frequent handling and fingering with the dominant right upper extremity; and (9) no work at unprotected heights or in the vicinity of uncovered unguarded moving machinery[.]

6.  [Plaintiff] is capable of performing past relevant work as a packager and retail cashier.  This work does not require the performance of work-related activities precluded by [plaintiff]'s residual functional capacity (20 CFR 404.1565 and 416.965).

    . . . .

    [Plaintiff] was born [in] . . . 1971 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.  The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).  [Plaintiff] has at least a high-school education (20 CFR 404.1564 and 416.964).  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [plaintiff] is "not disabled," whether or not [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

    . . . .

> [C]onsidering [plaintiff]'s age, education, work experience, and residual functional capacity, [plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.[2]

7.  [Plaintiff] has not been under a disability, as defined in the Social Security Act, from June 10, 2021, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 22-33).

### C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 587 U.S. 97, 97 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination.  Even if substantial evidence supports the ALJ's conclusion that the

---

[2] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative unskilled light work such as cashier (500,000 jobs in the national economy), clerical assistant (15,000 jobs in the national economy), and marker (129,000 jobs in the national economy).  (Tr. 32, 73).

plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

**D.  Specific Errors**

Plaintiff contends that the ALJ did not properly determine plaintiff's residual functional capacity (RFC) because: (1) the ALJ improperly evaluated the medical opinion shared by orthopedic specialists, Chad Broering, M.D., and Adam Homan, PA-C; and (2) the ALJ did not provide valid reasons to disregard plaintiff's subjective testimony regarding her symptoms.  The Court will address each assignment of error in turn and summarize medical evidence as relevant within its discussion.

1. Medical opinions

ALJs must adhere to agency regulations governing the evaluation of medical opinion evidence.  Under the regulations applicable to plaintiff's claims, the Commissioner will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."[3]  20 C.F.R. § 416.920c(a).[4]  Rather, the Commissioner will consider "how persuasive" the medical opinion is.  20 C.F.R. § 416.920c(b).

---

[3] A "prior administrative medical finding" is defined as "[a] finding, other than the ultimate determination about whether the individual is disabled, about a medical issue made by an MC [medical consultant] or PC [psychological consultant] at a prior administrative level in the current claim."  82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850. For clarity, the Court will refer to the limitations opined by the state agency reviewing physicians and psychologists as "assessments" or "opinions."

[4] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical . . . and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively."  *Miller v. Comm'r of Soc. Sec.*, No. 3:18-cv-281, 2019 WL 4253867, at *1 n.1 (S.D. Ohio Sept. 9, 2019) (quoting *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007)).  The Court's references to SSI regulations should be read to incorporate the corresponding and identical DIB regulations for purposes of this Order.

In determining the persuasiveness of a medical opinion, the ALJ considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 416.920c(c)(1)-(5). The most important factors the ALJ must consider are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). With respect to the supportability factor, "[t]he more relevant the objective medical evidence[5] and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 416.920c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ." 20 C.F.R. § 416.920c(c)(2). The ALJ is required to "explain how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. 20 C.F.R. § 416.920c(b)(2). Conversely, the ALJ "may, but [is] not required to, explain" how he/she considered the relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation. *Id.* However, where two or more medical opinions or prior administrative findings about the same issue are equally persuasive, the ALJ must articulate how he or she "considered the other most persuasive factors in paragraphs (c)(3) through (c)(5). . . ." 20 C.F.R. § 416.920c(b)(3). Finally, the ALJ is not required to articulate how he or she considered evidence from nonmedical sources. 20 C.F.R. § 416.920c(d).

---

[5] Objective medical evidence is defined as "signs, laboratory findings, or both." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.

The ALJ assessed the shared opinion of Dr. Broering and PA-C Homan as follows:

> The claimant's orthopedic providers also imposed a restriction of lifting no more than 5 pounds with the left upper extremity as of September 2021 (see, Exhibit 15F at 7, 10).  However, at the hearing, the claimant testified she could lift a gallon of milk which weighs more than 5 pounds.  Moreover, this restriction appears to have been imposed only for 3 months while the claimant's pain management regimen was adjusted (Exhibit 7F at 10).  Thus, it is reasonable to conclude this restriction is not a reliable longitudinal picture of the claimant's level of physical functioning, and as such, is not persuasive on a long-term basis.

(Tr. 27).

      a.   *Supportability*

Plaintiff argues that the ALJ failed to properly evaluate Dr. Broering and PA-C Homan's opinion.  In particular, she argues that the ALJ failed to properly assess the supportability of their opinion with objective medical evidence and instead relied solely on her perception that it was temporally limited.  Plaintiff points a series of records from Dr. Broering and PA-C Homan regarding her left upper extremity, which support their opinion:

- <u>PA-C Homan, May 3, 2021</u>

  Pain-free arc of motion limited, tender to palpation over the lateral aspect of the left shoulder, positive Hawkins impingement sign, and mildly positive Speed's test.  (Tr. 645).

- <u>PA-C Homan, August 2, 2021</u>

  Non-tenderness to joint palpation and normal strength, stability, and range of motion noted *except as to affected extremity (left shoulder)*; pain-free arc of motion limited; tender to palpation over the lateral aspect of the shoulder; positive empty can test;

8

positive Speed's test; positive O'Brien and Finkelstein tests; and tenderness to palpation over the first extensor dorsal compartment.  (Tr. 663-64).

- <u>PA-C Homan, August 18, 2021</u>

  Limited and relatively painful arc of motion, positive Finkelstein test, positive impingement sign, positive empty can test, and tender to palpation over the lateral aspect of the shoulder.  (Tr. 770)

- <u>Dr. Broering, September 29, 2021</u>

  Limited and painful arc of motion, positive empty can test, positive Finkelstein sign, and tender to palpation over lateral deltoid.  (Tr. 766-67)

- <u>PA-C Homan, March 9, 2022</u>

  Non-tenderness to joint palpation and normal strength, stability, and range of motion noted *except as to affected extremity (left shoulder)* and mildly antalgic and limited arc of motion.  (Tr. 999).

- <u>Left shoulder MRI, October 15, 2021</u>[6]

  Severe AC joint degenerative changes with associated large inferior osteophytes that create mass effect on the supraspinatus tendon.  Associated moderate supraspinatus tendinosis with low-grade bursal-sided fraying of the tendon at the critical zone and humeral insertion.  Additional moderate infraspinatus tendinosis with interstitial tearing at the humeral insertion.  Moderate intra-articular biceps tendinosis with

---

[6] Dr. Broering referred plaintiff for this imaging.

associated low-grade tearing.  Degenerative tearing of the superior labrum at the biceps anchor.  (Tr. 783).

Plaintiff also argues a sequential and comprehensive review of Dr. Broering and PA-C Homan's records demonstrates their five-pound weight lifting restriction was indefinite.  Plaintiff points to an August 18, 2021 PA-C Homan record showing that she "*ha[d] done* . . . activity modification." (Tr. 769 (emphasis added)).  A September 29, 2021 Dr. Broering record notes that they "*ke[pt]* a 5-pound lifting restriction at work since she is having so much pain"  (Tr. 767 (emphasis added)).  While it is true that at a November 8, 2021 visit, PA-C Homan noted that he was putting plaintiff on the five-pound lifting restriction for the left upper extremity for three months (Tr. 764), at a March 9, 2022 follow-up, plaintiff reported a pain level of 9/10 and continued to have a "Work Slip with Restrictions" in her care plan.  (Tr. 999-1000).

The Commissioner argues in response that the ALJ properly considered the supportability of Dr. Broering and PA-C Homan's five-pound weight lifting restriction when she noted that it "appear[ed] to have been imposed only for 3 months" while medication was adjusted.  (Tr. 27).  In reply, plaintiff argues that merely discussing the duration of Dr. Broering and PA-C Homan's opinion does not satisfy the regulatory requirement that the ALJ discuss its supportability— especially when the record evidence as a whole does not support a limited duration (an argument the Commissioner did not address).

The Court finds the ALJ failed to adequately address the supportability of Dr. Broering and PA-C Homan's five-pound weight lifting restriction.  The only explicit reason the ALJ provides for discounting the supportability of this opinion is its duration.  (*See id.*, referring to

Tr. 764). Alone, this is not substantial evidence on which to find that Dr. Broering and PA-C Homan's opinion was not supported. *See Scott K. v. Comm'r of Soc. Sec. Admin.*, No. 3:21-cv-129, 2022 WL 4484603, at *3 (S.D. Ohio Sept. 27, 2022) (An ALJ's explanation that an opinion "seem[ed] to be limited" to a finite period was not sufficient to demonstrate that an opinion was not supported).

The ALJ does not adequately explain her supportability conclusion elsewhere in the decision. The Sixth Circuit "has not specifically addressed the articulation required for an ALJ to adequately explain her consideration of the supportability and consistency factors," and it is true that "meaningful judicial review exists—even if the ALJ provided only a cursory or sparse analysis—if the ALJ made sufficient factual findings elsewhere in the decision that support her conclusion." *Booker R. v. Comm'r of Soc. Sec. Admin.*, No. 3:22-cv-170, 2023 WL 4247312, at *4-5 (S.D. Ohio June 29, 2023) (construing supportability analysis from ALJ's comparison of medical opinion with "the physician's own findings and explanations"). Here, however, there is no such meaningful comparison between Dr. Broering and PA-C Homan's shared opinion with their records. Earlier in her decision, the ALJ did include a series of records from Dr. Broering and PA-C Homan discussing plaintiff's left shoulder issues; but those records *support* their opined restriction. (*See* Tr. 22-23, referring to Tr. 645 (limited arc of motion, tenderness to palpation over lateral aspect of left shoulder, positive Hawkin's impingement sign, mildly positive Speed's test), Tr. 671 (tenderness to palpation over first dorsal compartment and positive Eichhoff test and Finkelstein maneuver), Tr. 763 (excepts from normal findings plaintiff's "affected [left upper] extremity"), Tr. 782-83 (left shoulder MRI showing severe AC

joint degenerative changes), and Tr. 1773 (bilateral severe wrist pain)).  The ALJ then referred to wide swaths of medical records (without pinpointing any particular records of Dr. Broering or PA-C Homan) as demonstrating that "measures in pain control have remained generally conservative. . . ."  (Tr. 23, citing Tr. 637-700; 755-83; 980-1012; 1043-1358; 1372-1417; and 1761-75).  But just prior to that conclusion, the ALJ acknowledged that "[a] major factor in delaying or postponing surgical intervention" for plaintiff's left shoulder was "her diabetes. . . ." (*Id.*, referring, *e.g.*, to Tr. 830, 892, 999, 1001, 1354).  While an ALJ may take into account the nature of a claimant's treatment, she may not do so in a vacuum.  *See Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 507 (6th Cir. 2013) (holding that it is appropriate to consider prescribed treatments in assessing a claimant's subjective symptoms, but the ALJ should also consider the claimant's reasons for pursuing (or not) such treatments).

In sum, the ALJ's decision does not allow for meaningful review of how she considered the supportability of Dr. Broering and PA-C Homan's opinion.

b. *Consistency*

Plaintiff also argues that the ALJ failed to properly assess the consistency of Dr. Broering and PA-C Homan's opinion with other medical evidence of record.  Plaintiff argues that the only piece of evidence the ALJ explicitly references on this point—plaintiff's testimony that she could lift a gallon of milk—is not substantial evidence to show inconsistency with the record because plaintiff did not testify that she could do this frequently or that she could lift this amount straight up without pain.  To the extent the ALJ implicitly discussed the consistency of Dr. Broering and PA-C Homan's shared opinion with other record evidence by contrasting it with

12

the state agency doctors' lifting opinion, plaintiff argues that the ALJ's assessment of the latter's lifting opinion was also flawed.  The state agency doctors found plaintiff could lift 20 pounds occasionally and 10 pounds frequently (*see* Tr. 87, 102)—an opinion the ALJ found "mostly persuasive" (Tr. 27).  Plaintiff argues, however, the ALJ did not discuss their opinion's supportability.  Plaintiff points out that initial reviewer Scott Volz, M.D., relied for his opinion on a May 21, 2021 physical therapy record from *prior to the relevant period* reflecting "mild strength deficits in left shoulder. . . ."  (Tr. 87, referring to Tr. 680).  On reconsideration, Mehr Siddiqui, M.D., mentioned bilateral wrist neuropathy, bilateral carpal tunnel syndrome, and the October 15, 2021 left shoulder MRI showing severe findings without explaining how these records supported his lifting/carrying opinion.

The Commissioner argues in response that the ALJ properly considered the consistency of the five-pound weight lifting restriction with the rest of the record by noting it was inconsistent with plaintiff's testimony that she could lift a gallon of milk.  (Tr. 27, referring to Tr. 61).  The Commissioner argues that this satisfied the ALJ's statutory duties, and plaintiff's arguments otherwise invite an impermissible reweighing of the evidence.

The Commissioner further argues that the ALJ properly assessed the state agency doctors' opinion.  The Commissioner notes that the ALJ found their opinion "mostly persuasive" because "no compelling evidence has been presented to show that [plaintiff] lacks the capacity to perform the basic . . . requirements of light work. . . ."  (*See* Tr. 27).  In support of this statement, the ALJ contrasted a single pre-onset medical record showing mild shoulder strength deficits and forward shoulder posture (Tr. 680) with other records showing normal muscle strength of the

13

bilateral upper and lower extremities (Tr. 776, 1378), normal gait and station (Tr. 637-700; 755-83; 980-1012), lack of an ambulatory device (Tr. 995), a negative straight leg raise (Tr. 1399), normal neurological findings (Tr. 863), and normal pulmonary findings (Tr. 701-20, Tr. 790-938, Tr. 1041-1358, and Tr. 1418-1736). (*See* Tr. 27). The Commissioner argues that the fact that the ALJ adopted a more restrictive RFC than that endorsed by the state agency doctors also indicates that she subjected their opinions to adequate scrutiny. *Kepke v. Comm'r*, 636 F. App'x 625, 632 (6th Cir. 2016) (the ALJ demonstrated scrutiny of a doctor's opinion by "appl[ying] even greater restrictions . . . than . . . opined" by that doctor).

In reply, as to the state agency doctors' opinion, plaintiff notes that the records cited by the ALJ purporting to show the consistency of their opinions with record evidence do the opposite. The October 28, 2021 record from Jocelyn Wray, M.D., highlighted by the ALJ to show normal muscle strength in the bilateral upper and lower extremities, references plaintiff's abnormal shoulder MRI on October 15, 2021. (*See* Tr. 777-78). The other record cited by the ALJ for normal muscle strength in the bilateral upper and lower extremities (November 8, 2021 PA-C Homan) includes a number of abnormal findings, including that plaintiff had "an arc of motion that is painful of 150/150/45/T10[,] . . . [p]ositive empty can test[,] [p]ositive Finkelstein sign[,] and] [t]ender to palpation over the lateral deltoid." (Tr. 1378-79).[7]

The Court finds that the ALJ's assessment of the consistency of Dr. Broering and PA-C Homan's five-pound weight lifting restriction is not supported by substantial evidence. The entirety of the ALJ's discussion of the consistency of this opinion with the rest of the record

---

[7] This record also reflects that tenderness to palpation was not noted "*except for* affected extremity" and that range of motion, strength and stability were normal "*except for* affected extremity." (Tr. 1378 (emphasis added)).

evidence is the following: "[Plaintiff] testified she could lift a gallon of milk which weighs more than 5 pounds." (Tr. 27). The ALJ does not cite a single piece of record *medical evidence* in this part of her decision demonstrating that Dr. Broering and PA-C Homan's opinion is inconsistent with the rest of the record.

In addition, the ALJ does not adequately explain her consistency conclusion elsewhere in the decision. *See Booker R.*, 2023 WL 4247312, at *4-5. Earlier in her decision, the ALJ characterized plaintiff's overall treatment as conservative. (*See* Tr. 23). But as just discussed, this part of the ALJ's decision is difficult to reconcile—as the ALJ explains in the preceding sentences that plaintiff could not address her left shoulder issues surgically due to her diabetes. (*Id.*). *See Johnson*, 535 F. App'x at 507. The medical records regarding plaintiff's upper extremity impairments that the ALJ highlights in this portion of her decision are not obviously inconsistent with Dr. Broering and PA-C Homan's opinion. (*See* Tr. 22-23, referring to Tr. 774 (bilateral hand paresthesia and wrist pain, left shoulder injury, and pain all day), Tr. 779-80 (abnormal EMG (electromyography)/NCS (nerve conduction study)) showing mild left median neuropathy consistent with carpal tunnel syndrome), Tr. 782-83 (left shoulder MRI showing severe AC joint degenerative changes)).

The Court also concludes that any comparison between the state agency doctors' lifting opinion and Dr. Broering and PA-C Homan's lifting opinion also does not satisfy the ALJ's mandate to analyze the consistency because the ALJ's assessment of the state agency doctors' opinion is not itself based on substantial evidence. The ALJ says nothing at all about how the state agency doctors supported their opinions. (*See* Tr 27). This was error. *See* 20 C.F.R. §

15

416.920c(b)(2) ("*[W]e will* explain how we considered the supportability and consistency factors

for . . . prior administrative medical findings in your determination or decision.") (emphasis

added). Particularly as it relates to Dr. Siddiqui, he specifically notes in his evaluation that

plaintiff has "severe AC joint degenerative changes with large osteophytes, fraying of tendon,

tendinosis, [and] low grade tearing" shown in the October 15, 2021 left shoulder MRI; and in the

"RFC Additional Explanation" section, he notes that plaintiff "continues to have difficulty with

her shoulder and b/l wrists." (Tr. 102-03). The Court cannot reconcile these observations with

Dr. Siddiqui's ultimate opinion, which perhaps explains why the ALJ did not discuss the

opinion's supportability. *See James A. v. Comm'r of Soc. Sec. Admin.*, No. 3:22-cv-207; 2023

WL 6307640, at *4 (S.D. Ohio Sept. 28, 2023) (the supportability factors "requires ALJs to

consider whether or not a medical source has explained—or sufficiently justified—his or her

own opinion").

The ALJ did discuss the consistency of the state agency doctors' opinions, but her

conclusion is not based on substantial evidence. The ALJ notes that "no compelling evidence

has been presented to show that claimant lacks the capacity to perform the basic . . . requirements

of light work. . . ." (Tr. 27). The ALJ primarily supports this conclusion by reference to a series

of "normal" records *having nothing to do with her hand, wrist, or left shoulder issues*. (*See id.*

(listing records regarding plaintiff's back, gait and station, use of ambulatory devices, lower

extremities, neurological examinations, and pulmonary examinations)). As relevant here (i.e.,

those relating to plaintiff's hand, wrist, and shoulder), the ALJ cites an October 28, 2021 record

from Jocelyn Wray, M.D., as showing that her bilateral upper extremity muscle strength was

16

within normal limits. (Tr. 27, referring to Tr. 776). The only other record the ALJ cites here is

to a November 8, 2021 PA-C Homan record. This record reflects that range of motion, strength

and stability are normal "*except for affected extremity.*" (Tr. 27, referring to Tr. 1378 (emphasis

added)). The record goes on to summarize "severe" findings from plaintiff's left shoulder MRI

and other abnormal findings related to plaintiff's left upper extremity. (*See* Tr. 1378-79). Dr.

Wray mentioned this same MRI in her visit record, but the ALJ does not mention this. (*See* Tr.

777-78). Given that the ALJ misread one of only two records that she relies upon for her

assessment of the consistency of the state agency doctors' opinion, the Court finds that the ALJ's

evaluation of the consistency of their opinion is not based on substantial evidence.[8]

In sum, the ALJ failed to properly assess the consistency of Dr. Broering and PA-C

Homan's opinions with the rest of the record.

The ALJ failed to properly analyze the consistency and supportability of Dr. Broering

and PA-C Homan's opinion. As such, the ALJ's decision regarding this medical opinion is not

based on substantial evidence. This error is not harmless. "[E]ven where the ALJ's decision is

based on mistakes, this Court affirms those conclusions if the mistakes constituted harmless

error." *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 524 (6th Cir. 2014) (citing *Berryhill v.*

*Shalala*, No. 92-5876, 4 F.3d 993, 1993 WL 361792, at *7 (6th Cir. Sept. 16, 1993)). Here,

---

[8] The Commissioner also notes that the ALJ referred in the Listing portion of her decision to an endocrinology record showing that plaintiff could move her limbs normally. (*See* Tr. 25, referring to Tr. 1176). This visit had nothing to do with plaintiff's left hand, wrist, or shoulder issues. The Court does not find that the ALJ's reference to this record in a section of her decision totally unrelated to plaintiff's lifting capabilities satisfies the ALJ's burden to articulate how he evaluated the consistency of Dr. Broering and PA-C Homan's opinion. Also, though not cited by either party, the ALJ also discusses treatment records later in her decision supporting plaintiff's "normal range of motion of the extremities." (Tr. 28). For this conclusion, the ALJ first relies on two records having nothing to do with her shoulder, hand, or wrist issues: an emergency room visit record related to low back pain (Tr. 863) and a visit regarding plaintiff's thyroid (Tr. 1176). In the records the ALJ cites that *are* related to these issues (PA-C Homan records), the normal range of motion notations carve out plaintiff's "excepted extremity." (Tr. 1374, 1376).

however, if the ALJ had adopted Dr. Broering and PA-C Homan's opinion as to even one of plaintiff's arms, this would have precluded all light work.  (*See* Tr. 74 (VE testimony that limitation *on one side* to lifting 10 pounds occasionally and less than 10 pounds frequently would eliminate all light work)).  The ALJ's error is not harmless.

### 2. Symptom severity

ALJs are to "consider all of the evidence in an individual's record" and determine whether the individual is disabled by examining "all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the individual's record."  Social Security Ruling (SSR)[1] 16-3p, 2016 WL 1119029, at *2.  ALJs also evaluate what the agency formerly termed the "credibility" of a plaintiff's statements about his or her symptoms.  *See, e.g.*, *Rogers*, 486 F.3d at 246-49.  In March 2016, the agency eliminated its use of the term "credibility" and clarified "that subjective symptom evaluation is not an examination of an individual's character. . . ."  SSR 16-3p, 2016 WL 1119029, at *1.  To avoid such mistaken emphasis, this analysis is now characterized as the "consistency" of a claimant's subjective description of symptoms with the record.  *See Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 171 n.3 (6th Cir. 2020) (citing *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016)).

A two-step inquiry applies to symptom evaluation.  The ALJ first determines if the record contains objective medical evidence of an underlying medically determinable impairment that

---

[1] "Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner."  *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 n.1 (6th Cir. 2010) (quoting 20 C.F.R. § 402.35(b)(1)).

could reasonably be expected to produce the individual's symptoms.  SSR 16-3p, 2016 WL

1119029, at *3.  *See also* 20 C.F.R. § 416.929(a); *Jones*, 336 F.3d at 475-76.  Step two of

symptom evaluation shifts to the severity of a claimant's symptoms.  The ALJ must consider the

intensity and persistence of the symptoms to determine the extent to which the symptoms limit

an individual's ability to perform work-related activities.  *See* 20 C.F.R. §§ 416.929(a) and (c);

SSR16-3p, 2016 WL 1119029, at *4.  In making this determination, the ALJ will consider the

following:

> (i)      Your daily activities;
>
> (ii)     The location, duration, frequency, and intensity of your pain or other
>          symptoms;
>
> (iii)    Precipitating and aggravating factors;
>
> (iv)     The type, dosage, effectiveness, and side effects of any medication you
>          take or have taken to alleviate your pain or other symptoms;
>
> (v)      Treatment, other than medication, you receive or have received for relief
>          of your pain or other symptoms;
>
> (vi)     Any measures you use or have used to relieve your pain or other
>          symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes
>          every hour, sleeping on a board, etc.); and
>
> (vii)    Other factors concerning your functional limitations and restrictions due to
>          pain or other symptoms.

20 C.F.R. § 416.929(c)(3).

An ALJ may not consider only objective medical evidence in determining disability

unless this evidence alone supports a finding of disability.  SSR 16-3p, 2016 WL 1119029, at *5

("If we cannot make a disability determination or decision that is fully favorable based solely on

objective medical evidence, then we carefully consider other evidence in the record in reaching a

conclusion about the intensity, persistence, and limiting effects of an individual's symptoms.");

20 C.F.R. § 416.929(c)(2) ("[W]e will not reject your statements about the intensity and

persistence of your pain or other symptoms or about the effect your symptoms have on your

ability to work solely because the available objective medical evidence does not substantiate

your statements.").  Moreover,

> [i]t is . . . not enough for our adjudicators simply to recite the factors described in
> the regulations for evaluating symptoms.  The determination or decision must
> contain specific reasons for the weight given to the individual's symptoms, be
> consistent with and supported by the evidence, and be clearly articulated so the
> individual and any subsequent reviewer can assess how the adjudicator evaluated
> the individual's symptoms.

SSR 16-3p, 2016 WL 1119029, at *9.  *See also id.* at *7 (noting that the ALJ "will discuss the

factors pertinent to the evidence of record").  At the same time, the ALJ is not required to cite or

discuss every factor used to evaluate the consistency of a plaintiff's description of symptoms

with the record evidence.  *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009)

("[T]he ALJ expressly stated that she had considered [the predecessor to SSR 16-3p], which

details the factors to address in assessing credibility.  There is no indication that the ALJ failed to

do so.  This claim therefore lacks merit. . . .").

Plaintiff argues that the ALJ failed to adequately explain her conclusion regarding

plaintiff's symptoms.  Plaintiff points to a lumbar spine MRI showing fractures and other

degenerative changes (Tr. 694-95), a lumbar spine X-ray showing continued compression

deformities (Tr. 772), and a CT of her abdomen/pelvis showing a chronic fracture (Tr. 1079) as

corroborating her subjective symptom reports.  As it relates to her hand and wrist issues, plaintiff

20

highlights an abnormal EMG/NCS reflecting moderate right and mild left carpal tunnel syndrome (Tr. 778), and positive Eichhoff and Finkelstein testing on both extremities at various times (Tr. 647, 663-64, 671, 673, 767, and 770).  Finally, as it relates to her shoulder, plaintiff points to evidence (much of which is discussed above) demonstrating severe left shoulder issues. (Tr. 645 (limited range of motion, tenderness to palpation, positive Hawkins impingement sign, mildly positive Speed's test), Tr. 663-64 (limited range of motion, tenderness to palpation, positive Speed's test, positive O'Brien's test), Tr. 766 (painful, limited range of motion; tender to palpation), 770 (painful, limited range of motion; tender to palpation), Tr. 783 ("Severe AC joint degenerative changes" along with numerous other issues), Tr. 999 (limited range of motion)). Finally, plaintiff argues that the ALJ relied on plaintiff's ability to perform certain activities of daily living without reconciling it with her testimony that she has difficulty standing and doing chores.  (*See* Tr. 59, 62).

The Commissioner argues in response that the ALJ noted her consideration of the applicable regulatory factors throughout the decision.  The Commissioner notes the ALJ's detailed summary of plaintiff's bilateral hand and wrist issues, left shoulder pain, and lumbar spine issues and corresponding treatments.  (*See* Tr. 22-23).  The Commissioner also notes that the ALJ discussed plaintiff's daily activities.  (*See* Tr. 22, 25, 29).  The Commissioner argues that plaintiff, again, impermissibly asks this Court to reweigh the evidence.

In reply, plaintiff argues that the Commissioner appears to concede that objective medical evidence supports the alleged severity of her symptoms.  Plaintiff argues that the ALJ's discussion of her activities (for example, "cleaning the house") are not sufficiently specific to

counter plaintiff's testimony, for example, that she could not stand for up to six hours in an eight-hour workday. Plaintiff argues that the ALJ's discussion of her activities of daily living were taken out of context and exaggerated. Finally, plaintiff argues that the ALJ did not discuss plaintiff's conservative treatment in the part of her decision where she discussed plaintiff's symptoms, and, in any event, plaintiff underwent surgery for her hand and wrist problems.

The Court concludes that the ALJ's assessment of plaintiff's symptoms is based on substantial evidence. At the outset of the ALJ's decision, she summarized plaintiff's testimony, which included reference to precipitating and aggravating factors related to plaintiff's symptoms (Tr. 22 (standing more than 60-90 minutes, sitting for prolonged periods)); measures that relieve plaintiff's pain (*id.* (sitting, but not for prolonged periods, and changing positions)); and activities of daily living (*id.* (dressing and bathing but not drawing, sewing, dishes, or laundry)). *See* 20 C.F.R. §§ 416.929(c)(3)(i), (iii), and (vi). Later, the ALJ cited records from plaintiff's primary care provider from November 2021 and January and April 2022 in which plaintiff reported that she "[c]leans around the house and walks outside throughout the week[,]" was "walking and moving all the time, and cleaning the house[,]" and performed "cleaning and chores." (Tr. 25 and 29, referring to Tr. 893, 1100, 1342, and 1355). *See* 20 C.F.R. § 416.929(c)(3)(i). The ALJ also discussed the location and duration of plaintiff's pain in her wrist, hands, shoulder, and back and referred to plaintiff's medications and other treatments. (Tr. 22-23). *See* 20 C.F.R. §§ 416.929(c)(3)(ii), (iv), and (v).

The ALJ's decision as a whole considered the 20 C.F.R. § 416.929(c)(3) factors, and the Court is not persuaded that the ALJ was required to restate all of these observations in the

paragraph of the decision in which she addressed plaintiff's subjective symptoms. *See Showalter v. Kijakazi*, No. 22-5718, 2023 WL 2523304, at *3 (6th Cir. Mar. 15, 2023) (court reviews ALJ's decision as a whole in evaluating findings for substantial evidence). The Court may uphold the ALJ's symptom severity analysis where the ALJ provides a "thorough explanation elsewhere of h[er] reasons for doubting [plaintiff's] account" of her symptoms. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014).

In the portion of the ALJ's decision where she explicitly discuss symptom-severity, she highlighted plaintiff's multiple reports that she regularly walked and performed chores around the house. (*See* Tr. 29, referring to Tr. 893, 1100, 1342, and 1355). Plaintiff urges the Court to find that this is not substantial evidence supporting the ALJ's decision regarding her symptoms. Plaintiff relies on other notations in these same records stating plaintiff should *increase* activity levels to 150 minutes per week—deducing that all of plaintiff's reported cleaning and walking amounted to no more than approximately 20 minutes per day. But it is also reasonable to conclude, as the ALJ here appears to have, that plaintiff's primary care provider was urging her to engage in *moderate intensity* exercise *in addition to* her normal walking and chores, and that this is the 150-minute figure referred to in the records. (*See, e.g.*, Tr. 1342 ("[I]ncrease exercise as tolerated up to 150 minutes per week at a moderate intensity.")). While substantial evidence may support plaintiff's interpretation of these records, the ALJ's interpretation is also based on substantial evidence and therefore entitled to deference. *See Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) ("If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion.").

The ALJ's analysis of the consistency of plaintiff's symptoms with the rest of the record is based on substantial evidence.

**III.  This matter is reversed and remanded for further proceedings.**

Based on the foregoing, plaintiff's Statement of Errors (Doc. 8) is **SUSTAINED IN PART AND OVERRULED IN PART** and the Commissioner's non-disability finding is **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS** consistent with this Order.

Date:  1/9/2025

Karen L. Litkovitz
United States Magistrate Judge

24